DAVID A. STEINBERG (SBN 130593)
  das@msk.com
YAKUB HAZZARD (SBN 150242)
  yxh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT; and ARISTA RECORDS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM FILMS LLC; NYBO PRODUCTIONS, LLC; BLACK LABEL MEDIA, LLC; WH MOVIE, LLC; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. __2:24-cv-1250__ <br><br> **COMPLAINT** <br><br> **Demand For Jury Trial** |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Plaintiffs Sony Music Entertainment and Arista Records LLC, by and through their attorneys, Mitchell Silberberg and Knupp LLP, for their Complaint against defendants Anthem Films LLC, NYBO Productions, LLC, Black Label Media, LLC, WH Movie, LLC, and Does 1 through 10, inclusive, allege, on knowledge as to their own actions, and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a civil action by Sony Music Entertainment ("SME") and Arista Records LLC ("ARLLC," together with SME, "Plaintiffs") against Anthem Films LLC ("Anthem"), NYBO Productions, LLC ("NYBO"), Black Label Media, LLC ("Black Label"), WH Movie, LLC ("WH Movie"), and Does 1 through 10, inclusive (together with Anthem, NYBO, Black Label, and WH Movie, "Defendants") for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, based on the willful and unauthorized use of 24 copyrighted Whitney Houston sound recordings owned by Plaintiffs (the "SME Recordings")[1] in the musical artist biopic *Whitney Houston: I Wanna Dance With Somebody* (the "Film"), which Film was produced by Defendants.

2. Plaintiffs and their predecessors have been at the forefront of recorded music for over a century, and produce, manufacture, distribute, sell, and license some of the most iconic and popular sound recordings of all time, including Whitney Houston's recordings of "Greatest Love of All" and "I Will Always Love You".

---

[1] The SME Recordings are: "I Believe In You And Me"; "Run To You"; "I Have Nothing"; "Greatest Love of All"; "Saving All My Love for You"; "Where Do Broken Hearts Go"; "How Will I Know"; "You Give Good Love"; "If You Say My Eyes Are Beautiful"; "I Wanna Dance with Somebody (Arista 15th Anniversary Version)"; "My Name Is Not Susan"; "Far Enough"; "Star Spangled Banner (Live from Super Bowl XXV)"; "I Will Always Love You"; "I Will Always Love You (Live From The Concert for a New South Africa)"; "Why Does It Hurt So Bad"; "It's Not Right But It's OK"; "I'm Every Woman"; "I'm Your Baby Tonight (From the Welcome Home Heroes Concert)"; "So Emotional"; "One Moment In Time"; "I Didn't' Know My Own Strength"; "Higher Love"; and "Don't Cry For Me".

16259192.1

**COMPLAINT**

3. Plaintiffs' massive investments in recorded music are protected by copyright law, which grants Plaintiffs the exclusive rights to, among other things, reproduce, distribute, publicly perform, transmit, and create derivative works of, its sound recordings.

4. An important portion of Plaintiffs' return on its investment in recorded music, which it shares with its exclusive recording artists, comes from licensing its recordings to others who use Plaintiffs' works in films, television shows, commercials, and the like, just like Defendants have done.

5. Musical biopics are biographical films that dramatize the lives of some of the greatest musicians. Unlike other types of films, musical biopics by their nature require use of the subject musician's music, as it is nearly impossible to explain the importance of a musician's creative genius or unique style and talent without the use of the musician's music.[2] Aware of the need for authorization to use Plaintiffs' sound recordings in order to produce a biopic about the life and music of Whitney Houston, and aware of the value of Plaintiffs' catalog, Anthem entered into a License Agreement ("License Agreement") and Access Agreement ("Access Agreement," together with the License Agreement, the "Agreements") with SME, each dated as of December 5, 2022. Pursuant to the Agreements, in exchange for receiving fees totaling ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Fees") from Anthem, SME agreed to allow Anthem to synchronize, reproduce and perform the SME Recordings and/or excerpts thereof in the soundtrack of and in timed relation with the Film, solely in context (*i.e.*, for use solely as embodied in the Film). Pursuant to the Agreements, Anthem was required to make payment of the Fees immediately following full execution of the Agreements (which took place on July 14, 2023) or July 17, 2023, whichever was earlier. Paragraph 3(b) of

---

[2] Scott Roxborough, *Milli Vanilli Pic Offers a Case Study for the Perils of the Music Biopic*, The Hollywood Reporter (Nov. 2, 2023, 8:45 AM), https://www.hollywoodreporter.com/movies/movie-news/milli-vanilli-film-girl-you-know-its-true-afm-music-biopics-1235634635/.

Exhibit A to the License Agreement expressly provides that if Anthem fails to pay the amounts owed to SME as required, "in addition to any of SME's rights and remedies, any use of the [SME Recordings in the Film] shall be unauthorized and SME reserves its rights and remedies under copyright and otherwise … ."

6.  The Film was first commercially released on December 23, 2022.

7.  As global box office successes such as *Bohemian Rhapsody*, *Elvis*, and *Rocketman* have shown, music biopics can account for some of the biggest draws in the movies.  According to publicly reported information, the Film's worldwide theatrical grosses have totaled over $59 million.[3]  The Film has also generated revenue from home video sales and from a license of the Film to Netflix.

8.  Anthem has failed to pay the Fees owed to SME under the Agreements.

9.  On August 29, 2023, SME notified Anthem in writing that its failure to make payment of the Fees due to SME constitutes a material breach of the Agreements, and demanded that Anthem cure such breach within the cure period set forth in the Agreements.  On October 27, 2023, SME notified Anthem and Black Label in writing that Anthem failed to cure its breach of the Agreements within the cure period outlined in the Agreements, and that as a result of such failure, pursuant to the terms of the Agreements, SME was entitled to pursue all available remedies and that any use of the SME Recordings in the Film was unauthorized and an infringement of SME's rights (including, without limitation, copyright rights).

10. As a result of Anthem's failures, Defendants' use of the SME Recordings in the Film has been unauthorized, and Defendants have had no legal right to use the SME Recordings.  Notwithstanding the foregoing, and despite being given notice of their infringing conduct, Defendants have continued to

---

[3] The Numbers, Box Office Performance for *Whitney Houston: I Wanna Dance With Somebody (2022)*, https://www.the-numbers.com/movie/Whitney-Houston-I-Wanna-Dance-With-Somebody#tab=box-office (last visited Feb. 13, 2024).

distribute and otherwise exploit the SME Recordings in connection with the Film without authorization.

11. Defendants' conduct has caused and continues to cause substantial and irreparable harm to Plaintiffs and the estate of Whitney Houston, while enriching Defendants at the expense of Plaintiffs and the estate of Whitney Houston. By this lawsuit, Plaintiffs seek damages for Defendants' on-going infringement of Plaintiffs' copyrights, and an injunction to stop Defendants' willful and deliberate infringement of the SME Recordings.

## PARTIES

12. Plaintiff Sony Music Entertainment is a general partnership organized and existing under the laws of Delaware, having its headquarters and principal place of business at 25 Madison Avenue, 20th Floor, New York, New York 10010, and having an office in Southern California located at 10202 W. Washington Blvd., Akio Morita Building, 6th Floor, Culver City, California 90232. SME is engaged in, among other things, the business of manufacturing, distributing, and licensing of sound recordings. SME exclusively owns and controls the copyright rights in and to certain of the SME Recordings and/or has the right, power and authority to license the SME Recordings. SME entered into two agreements with Anthem to, among other things, license the SME Recordings to Anthem for use in the Film. One of those agreements was entered into by SME through its Southern California office.

13. Plaintiff Arista Records LLC is a Delaware limited liability company with its principal place of business at 25 Madison Avenue, New York, New York 10010. ARLLC exclusively owns and controls the copyright rights in and to many of the SME Recordings, and is the successor-in-interest to the record label that first published many of the SME Recordings at issue in this Complaint. ARLLC is a wholly owned subsidiary of SME, and SME has the right to license sound recordings owned by its subsidiaries, including ARLLC.

14. Defendant Anthem Films LLC is a limited liability company organized and existing under the laws of Massachusetts, having a principal place of business at 2 Jordan Road, Peabody, Massachusetts 01960. Anthem, a film production company, produced the Film. According to Anthem's Certificate of Organization, which was signed by Club Q Pictures LLC under the penalties of perjury on May 5, 2021, Anthem is managed by Club Q Pictures LLC. According to Club Q Picture LLC's Certificate of Organization, which was signed by Jeff Kalligheri under the penalties of perjury on September 29, 2020, Club Q Pictures LLC is managed by Jeff Kalligheri and Denis O'Sullivan Jr.

15. Defendant NYBO Productions, LLC is a limited liability company organized and existing under the laws of Delaware, having its headquarters at 1531 N. Cahuenga Blvd, Hollywood, California 90028. NYBO holds the copyright in the Film and, upon information and belief, is the counterparty to a distribution agreement with Sony Pictures Entertainment in respect of the Film. Pursuant to two separate UCC filings dated October 1, 2021, WH Movie, LLC is a secured party for Anthem Films LLC and NYBO Productions, LLC. The debtor address listed for NYBO in the UCC filing in which it is the debtor is c/o Compelling Pictures, LLC, 1531 N. Cahuenga Blvd., Los Angeles, California 90028. Compelling Pictures, LLC, which is also a Delaware limited liability company organized with its headquarters at 1531 N. Cahuenga Blvd, Hollywood, California 90028, is Jeff Kalligheri's production and financing entity.

16. Defendant Black Label Media, LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 9301 Wilshire Blvd., Ste. 604, Beverly Hills, California 90210. Black Label, a film finance and production company, financed and produced the Film.

17. Defendant WH Movie, LLC is a limited liability company organized and existing under the laws of Delaware, having its headquarters at 8447 Wilshire Blvd #204, Beverly Hills, California 90210. WH Movie is a so-called single

purpose entity created, owned, and controlled by Black Label through which Black Label financed and produced the Film pursuant to agreements with Anthem and/or NYBO, including without limitation a non-recourse Loan Agreement between WH Movie and NYBO dated December 2, 2021, and an Intercreditor and Subordination Agreement between WH Movie, NYBO, Anthem, and a tax credit lender ("Tax Lender") dated November 1, 2021 (collectively, the "Known Loan Agreements"), and through which Black Label purports to have a first priority security interest in and to all of Anthem's and NYBO's assets, whether now owned or hereafter acquired, and a right to foreclose on NYBO's assets, including the Film.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of the remaining Doe defendants are unknown to Plaintiffs, which have therefore sued said defendants by such aliases and fictitious names. These are defendants whose real identities are not yet known to Plaintiffs, but who are acting in concert with one another in committing the unlawful acts alleged herein. Plaintiffs will seek leave to amend this complaint to state their true names and capacities once said defendants' identities and capacities are ascertained. Plaintiffs are informed and believe, and on that basis allege, that all defendants sued herein are liable to Plaintiffs as a result of their participation in all or some of the acts set forth in this complaint.

19. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things alleged in this complaint, was acting within the course and scope of such agency.

**JURISDICTION AND VENUE**

20. This court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21. Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants Black Label and WH Movie may be found in this district. Venue is

also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS APPLICABLE TO ALL CLAIMS

### SME's Sound Recordings and Licensing Business

22. SME is home to some of the world's most distinguished record labels, including Columbia Records, RCA Records, Sony Nashville, and Epic Records, through which it contracts with its world-class recording artists.

23. Plaintiffs' catalog of recordings includes recordings by some of the world's most famous artists, such as Whitney Houston, spanning over a century. In addition to well-known artists, SME invests heavily in signing and developing new artists, and in marketing and promoting their recordings. SME's financial incentives to invest in artists and their music flow directly from the protections afforded by the copyright laws and the revenues it earns from the sound recordings that it owns and/or controls.

24. Plaintiffs are, and at all times relevant to this proceeding were, the sole owners or exclusive licensees of all right, title, and interest in and to the copyrights in the SME Recordings at issue.

25. The copyrights in the SME Recordings at issue are valid and are registered with the United States Copyright Office.

### *Whitney Houston: I Wanna Dance with Somebody*, the Musical Biopic of Singer Whitney Houston

26. The Film, *Whitney Houston: I Wanna Dance with Somebody*, is a music biopic depicting the life and career of the late American singer and actress Whitney Houston, who was signed to SME, ARLLC and/or ARLLC's predecessor-in-interest Arista Records, Inc. from the beginning of her professional recording career until her untimely death in 2012.

27. Whitney Houston is one of the most awarded female musical artists and best-selling recording artists of all time, estimated to have sold more than 200

million records worldwide. Whitney Houston won 6 Grammys, 16 Billboard Music Awards, 22 American Music Awards and 2 Emmys, among other honors. Houston made her acting debut in the 1992 film "The Bodyguard" and recorded six songs for the film's soundtrack, including "I Will Always Love You." The recording was awarded the Grammy for Record of the Year. The soundtrack album won the Grammy for Album of the Year and remains the best-selling soundtrack album in history. In 2020, Houston was posthumously inducted into the Rock & Roll Hall of Fame and became the first Black artist to have 3 RIAA Diamond Awards.

28. Anthem was a producer of the Film.

29. Through WH Movie, Black Label was a co-financier and co-producer of the Film.[4] Molly Smith, Trent Luckinbill, and Thad Luckinbill from Black Label produced the Film, and Rachel Smith and Seth Spector from Black Label executive produced the Film.[5] Anthem and/or NYBO and WH Movie are parties to certain agreements, including without limitation the Know Loan Agreements, pursuant to which WH Movie co-financed and co-produced the Film, which agreements conferred upon Black Label, through WH Movie, certain decision-making authority over the production and exploitation of the Film, approval rights over Anthem's and NYBO's expenditures in respect of the Film, control over the distribution of the Film's proceeds, and a purported first position security interest in and to, among other things, the revenues generated from the Film.

30. The Film was commercially released in theaters on December 23, 2022, released on home video in February 2023, and made available for streaming on Netflix starting in April 2023. The Film is also available for rent and purchase

---

[4] Justin Kroll, *Ashton Sanders To Play Bobby Brown In Whitney Houston Biopic As Black Label Media Joins As Co-financier*, Black Label Media (Sept. 21, 2021), https://blacklabel-media.com/press-article/ashton-sanders-to-play-bobby-brown-in-whitney-houston-biopic-as-black-label-media-joins-as-co-financier/.
[5] *Id.*

through Black Label's website at https://blacklabel-media.com/film/i-wanna-dance-with-somebody/.

31. The Film's box-office grosses totaled at least $23.7 million in the United States and Canada, and $36.1 million in other territories, for a worldwide total of $59.8 million.[6]

32. Despite the Film's grosses, Anthem and NYBO still have outstanding debts to WH Movie, for which WH Movie is secured. As a result of Anthem's and NYBO's agreements with WH Movie and its outstanding debts, Black Label, through WH Movie, has significant control over Anthem's and NYBO's current operations and company proceeds, and has approval rights over Anthem's and NYBO's expenditures.

**The License Agreement and Access Agreement Between SME and Anthem Relating to the Use of Certain Whitney Houston Recordings Owned By SME in the Film**

33. Recognizing the need for a license to use and exploit the SME Recordings in connection with the Film, Anthem entered into the Agreements.

34. The Agreements contained several promises, covenants, representations, and warranties from both SME and Anthem. Among these, and relevant to this Complaint, in Paragraph 2 of Exhibit A to the License Agreement, SME granted Anthem "a non-exclusive license to re-record, reproduce and perform the [SME] Recording[s] and/or excerpts from the [SME] Recordings, in the soundtrack of and in timed relation with the Film, for the sole purpose of exhibiting and distributing the Film embodying the [SME] Recording(s) during the Term, throughout the Territory, solely by means of the Media and Usage set forth in the Agreement."

---

[6] The Numbers, Box Office Performance for *Whitney Houston: I Wanna Dance With Somebody (2022)*, https://www.the-numbers.com/movie/Whitney-Houston-I-Wanna-Dance-With-Somebody#tab=box-office (last visited Feb. 13, 2024).

35.     In consideration for the rights granted by SME under the Agreements, Anthem agreed to pay to SME the Fees.  Paragraph 3 of Exhibit A to the License Agreement requires Anthem to "pay SME the non-returnable [Fees] set forth in the Agreement immediately following the full execution hereof or July 17, 2023, whichever is earlier (such earlier date, the 'Payment Date')."  Per the License Agreement, the Fees total "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████".  To date, Anthem has not paid the Fees, or any portion of the Fees, due under the Agreements.

36.     Paragraph 3(a) of Exhibit A to the License Agreement makes clear that Anthem's "[f]ailure to pay the [Fees] on or before the Payment Date shall be deemed a material breach [of the Agreements]", subject only to a notice and cure provision providing that "Licensee shall have … fifteen (15) business days … to cure [any] such default or breach."  And, Paragraph 3(b) of Exhibit A to the License Agreement explicitly states that, in the event Anthem fails to pay the Fees as required under the terms of the License Agreement, "in addition to any of SME's rights and remedies, any use of the Recording(s) shall be unauthorized and SME reserves its rights and remedies under copyright and otherwise".

### Notice of Breach and Voiding of the Agreements

37.     Despite the fact that the Film was released in December 2022 and the SME Recordings were used in the Film, Anthem has failed to make any payments to SME due under the Agreements.

38.     On August 29, 2023, SME sent Anthem a letter notifying Anthem that it had materially breached the Agreements by failing to make the required payment of the Fees pursuant to the terms of the Agreements, and further advised that,

pursuant to Paragraph 7(b) of Exhibit A to the License Agreement, Anthem had fifteen (15) business days to cure such breach or default.

39. After receiving SME's initial breach letter, Anthem contacted SME to advise SME that Anthem was due a payment from Tax Lender in connection with a tax credit due to Anthem from the State of Massachusetts, and that once Anthem received the tax credit payment, it would have the funds to pay SME the Fees due under the Agreements. Anthem asked if SME would agree to wait for its payment of the Fees until Anthem received such tax credit payment. Following that discussion, SME sent Anthem an email indicating that SME would agree to wait for payment of the past-due Fees until Anthem received the tax credit payment, provided however, that Anthem agree to enter into certain agreements memorializing the arrangement. Anthem ultimately indicated that it could not execute such agreements because, under Anthem's and/or NYBO's agreements with WH Movie (including, without limitation, the Known Loan Agreements), pursuant to which Black Label, through WH Movie, has approval rights over Anthem's and NYBO's expenditures in respect of the Film, WH Movie (or Black Label) was entitled to receive the tax credit payment, and Black Label ordered that Anthem neither pay SME out of the proceeds of the tax credit payment nor direct the relevant tax authority to credit SME the amount of the Fees.

40. Notwithstanding the formal notice and demand, Anthem failed to make payment in response to SME's August 29, 2023 notice of breach letter. Accordingly, on October 27, 2023, SME sent written notice to Anthem and Black Label via email and overnight mail advising, among other things, that as a result of Anthem's failure to pay the Fees and to cure such failure, any use by Anthem and/or Black Label of the SME Recordings in the Film is (and has been) unauthorized and an infringement of SME's rights.

41. As a result of Anthem's failure to pay the Fees and/or to remit to SME the consideration due in connection with the Agreements, the Agreements are void

Mitchell Silberberg & Knupp LLP

16259192.1

12

COMPLAINT

*ab initio*, and as expressly set forth and reserved in the Agreements, any and all use by Anthem and/or Black Label of the SME Recordings in the Film is unauthorized and an infringement of SME's rights under copyright and otherwise.

42. On October 31, 2023, counsel for WH Movie sent a letter to Anthem and NYBO via e-mail acknowledging SME's notice dated October 27, 2023, denying that WH Movie is obligated to make any payment of the Fees, and demanding that Anthem and NYBO honor their contractual obligations to SME and indemnify WH Movie from any and all losses arising from the claims set forth in SME's notice.

**Infringement Resulting From Anthem's Failure To Pay The Fees**

43. As a result of Anthem's failure to pay the Fees to SME, it is clear that there was no license or authorization to use the SME Recordings used in the Film. Nevertheless, the Film embodying the SME Recordings was, and continues to be, exhibited, distributed, and exploited by Anthem, NYBO, Black Label, and WH Movie without SME's authorization.

**COUNT I**

**DIRECT COPYRIGHT INFRINGEMENT**

*(Against Anthem Films LLC and NYBO Productions, LLC)*

44. Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 43 of this Complaint as though set forth fully herein.

45. Plaintiffs own and/or are the exclusive licensees of the copyrights and/or exclusive rights in the SME Recordings. All of the sound recordings listed on Exhibit B to the License Agreement have been registered with the U.S. Copyright Office.

46. Anthem failed to pay for permission from Plaintiffs to incorporate the SME Recordings in the Film; instead, Anthem simply misappropriated the SME Recordings. Without permission, Anthem and NYBO incorporated the SME

Recordings into the Film. By producing the Film and engaging in the acts set forth above, Anthem and NYBO have infringed Plaintiffs' exclusive copyright rights in and to the SME Recordings. Anthem and NYBO have further infringed Plaintiffs' exclusive copyright rights in and to the SME Recordings by exhibiting, distributing, and transmitting the Film embodying the SME Recordings without authorization in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

47. Plaintiffs notified Anthem that it was infringing Plaintiffs' copyrights, but Anthem failed to cease its acts of infringement. Anthem and NYBO have continued to exhibit and distribute the Film even after being explicitly ordered by SME to cease and desist. By continuing to exhibit, distribute, and transmit the Film with full knowledge that such activity was infringing Plaintiffs' rights in the SME Recordings, Anthem and NYBO have committed acts of knowing and willful infringement that have enabled Anthem and NYBO to obtain profit therefrom.

48. As a direct and proximate result of Anthem and NYBO's infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are also entitled to recovery of Anthem and NYBO's profits attributable to their infringing conduct alleged herein, including from any and all exploitations of the Film theatrically, in the form of DVDs or Blu-rays, via electronic deliveries and other licensing, sales and distributions of the Film in any and all media whether now or hereafter known, and an accounting of such profits. Alternatively, Plaintiffs are entitled to a separate award of maximum statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 for Anthem and NYBO's infringement of each of the 24 SME Recordings, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

49. As a result of Anthem and NYBO's conduct, Plaintiffs have sustained and continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court,

Anthem and NYBO will continue to infringe Plaintiffs' rights in the SME Recordings. Plaintiffs are entitled to preliminary and permanent injunctive relief restraining and enjoining Anthem and NYBO's ongoing infringing conduct.

50. Plaintiffs further are entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

# COUNT II
## VICARIOUS COPYRIGHT INFRINGEMENT
*(Against Black Label Media, LLC and WH Movie, LLC)*

51. Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 50 of this Complaint as though set forth fully herein.

52. Plaintiffs own and/or are the exclusive licensees of the copyrights and/or exclusive rights in the SME Recordings. All of the sound recordings listed on Exhibit B to the License Agreement have been registered with the U.S. Copyright Office.

53. Anthem, NYBO, Black Label, and WH Movie do not have authorization, permission, license, or consent from Plaintiffs to exploit the SME Recordings in the Film.

54. Black Label and WH Movie possessed the right and ability to supervise and/or control the infringing conduct of Anthem.

55. Black Label and WH Movie have an obvious and direct financial interest in the exploitation of the SME Recordings in the Film by Anthem.

56. By the acts set forth above, Anthem has unlawfully synchronized, reproduced, and performed the SME Recordings and/or excerpts thereof, in the soundtrack of and in timed relation with the Film, for the purpose of exhibiting, distributing, and transmitting the Film embodying the SME Recordings. This activity constitutes infringement or an unauthorized act in violation of 17 U.S.C. §§ 106 and 501.

57. Black Label and WH Movie are vicariously liable for the direct infringements of Anthem described herein. As co-financiers and co-producers of the Film, and pursuant to WH Movie's agreements with Anthem and/or NYBO, including without limitation the Known Loan Agreements, Black Label and WH Movie had the right and ability to supervise and/or control the infringing activities that occurred in creating, exhibiting, distributing, licensing and transmitting the Film, as evidenced by, among other things, WH Movie's approval rights over Anthem's and NYBO's expenditures in respect of the Film, and Black Label's and WH Movie's taking over of the post-production of the Film, including without limitation the hiring of production counsel to handle post-production legal matters. Black Label and WH Movie are capable of exercising their influence to stop Anthem's infringing activity, as evidenced by, among other things, their demand that Anthem not pay SME the Fees out of the proceeds of the tax credit payment, their right to foreclose on the Film, and their right to make compromises in respect of the Film in the event that NYBO and/or Anthem fails to fulfill certain of their obligations relating to the Film. Despite having full knowledge of Anthem's infringing activity, Black Label and WH Movie chose not to stop Anthem's infringing activity. Black Label and WH Movie derive an obvious and direct financial benefit from Anthem's infringement, as both entities share in the proceeds of the Film, and WH Movie purportedly has a first priority lien that entitles it to receive the proceeds generated from the Film. Further, Anthem's use of the SME Recordings in the Film without payment to SME constitutes a direct financial benefit to Black Label and WH Movie.

58. Based on the foregoing, Black Label and WH Movie are vicariously liable for the unlawful reproduction, distribution, transmission, and creation of the Film embodying the SME Recordings, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

16
**COMPLAINT**

59. Anthem's infringing conduct alleged herein, for which Black Label and WH Movie are vicariously liable, was and continues to be willful and with full knowledge of and in disregard to Plaintiffs' rights in the SME Recordings.

60. As a direct and proximate result of the infringements by Anthem for which Black Label and WH Movie are vicariously liable, Plaintiffs are entitled to damages and to Black Label's and WH Movie's profits in an amount to be proven at trial. Alternatively, Plaintiffs are entitled to a separate award of maximum statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 per work for Anthem's infringement of each of the 24 SME Recordings, or in such other amount as may be proper under 17 U.S.C. § 504(c).

61. As a result of Anthem's conduct for which Black Label and WH Movie are vicariously liable, Plaintiffs have sustained and continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Anthem will continue to infringe Plaintiffs' rights in the SME Recordings. Plaintiffs are entitled to preliminary and permanent injunctive relief restraining and enjoining Anthem's continuing infringing conduct, for which Black Label and WH Movie are vicariously liable.

62. Further, Plaintiffs are entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

   A. For a declaration that Defendants willfully infringed Plaintiffs' copyrighted sound recordings;

   B. For an injunction, pursuant to 17 U.S.C. § 502, enjoining Defendants from further infringing upon Plaintiffs' copyrights;

Mitchell Silberberg & Knupp LLP

16259192.1

17
**COMPLAINT**

C. For an order, pursuant to 17 U.S.C. § 503, requiring Anthem to immediately destroy, delete, or return any and all materials provided to Anthem under the Access Agreement;

D. For statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Anthem's and NYBO's willful violations of Plaintiffs' rights under the Copyright Act and Black Label's and WH Movie's vicarious liability associated therewith; or, in the alternative, at Plaintiffs' election, SME's actual damages, pursuant to 17 U.S.C. § 504(b), including Anthem's, NYBO's, Black Label's, and WH Movie's profits from infringement, in an amount to be proven at trial;

E. For an award of Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

F. For an award of pre-judgment and post-judgment interest, to the fullest extent available, on any monetary award made part of the judgement against Defendants; and

G. For such other and further relief as the Court deems just and proper.

DATED: February 14, 2024

DAVID A. STEINBERG
YAKUB HAZZARD
MITCHELL SILBERBERG & KNUPP LLP

By: _____
Yakub Hazzard
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby respectfully demand a jury trial on all issues so triable in this action.

DATED: February 14, 2024

DAVID A. STEINBERG
YAKUB HAZZARD
MITCHELL SILBERBERG & KNUPP LLP

By: _____
Yakub Hazzard
Attorneys for Plaintiffs